**HOUSTON CHRONICLE PUBLISHING COMPANY, Relator,**

v.

**The Honorable Fred EDWARDS, Respondent.**

No. 09–97–272CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 4, 1997.

Decided Nov. 20, 1997.

Rehearing Overruled Dec. 11, 1997.

William W. Ogden, Joel R. White, Sally Mann Romano, Ogden, Gibson, White & Broocks, Houston, Walter Clay Cooke, Brown McCarroll Oaks Hartline & Carll, The Woodlands, for relator.

Michael A. McDougal, District Attorney, David Bluestein, First Assistant District Attorney, Gail Kikawa McConnell, Assistant District Attorney, Conroe, for real party in interest.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

This is a mandamus action. The Hearst Corporation, d/b/a the Houston Chronicle Publishing Company (Chronicle) and Westward Communications, L.L.C., publisher of the *Conroe Courier* (Courier), seek a writ ordering Judge Fred Edwards to set aside two orders. One order grants the State's motion to seal a search warrant and the affidavit in support of the search warrant while the other denies the Chronicle's motion to unseal the search warrant affidavit. Both of these orders grow out of a criminal investigation into the homicides of Misty Morgan and Sarah Cleary. On July 15, 1997, the Chronicle made both oral and written requests to Judge Edwards that he make available all search warrant affidavits and accompanying inventories that had been executed in connection with the investigation of the two murders. On July 16th, the State filed its motion and it was summarily granted by Judge Edwards. On July 17th, the Chronicle filed its motion. The motion alleged three grounds: TEX.CODE.CRIM. PROC. ANN. art. 18.01(b) (Vernon 1977 & Supp.1997),[1] the United States and Texas Constitutions and the common law. The Courier filed a plea in intervention and a joinder in the motion to unseal. On July 21st the court held a hearing on the motion to unseal and on July 22nd entered an order denying the motion. The order states, in pertinent part:

> After considering the arguments of counsel; the tapes of the public hearings of the Texas House of Representatives relat-

---

1. **Art. 18.01. Search warrant**
 (b) No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance.

A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested. The affidavit is public information if executed.

ing to HB 2351, 67th Legislature (1981); the bill analysis relating to HB 2531; the published opinion of the Court of Appeals in *The Houston Chronicle Publishing Co. v. Woods*, No. 09-97-00172-CV, [949 S.W.2d 492] (Tex.App.—Beaumont, July 10, 1997, no pet. hist.)[sic]; and the subject search warrant affidavit . . .

. . . .

The Court finds that the State has shown a compelling need to shield the affidavit from the public eye to preserve the integrity of an early and ongoing investigation into the capital murders of two young women. This compelling need reflects a specific, serious, and substantial interest which clearly outweighs the presumption of openness of the affidavit, a public record. The Court also finds that there is no probable adverse effect to the general public health or safety, to the contrary, the apprehension of the perpetrators of this crime will contribute to the general public health and safety.

The Court further finds that no less restrictive means than sealing the affidavit will adequately and effectively protect the investigation of this case.

At the July 21st hearing, the newspapers argued the language of 18.01(b) was unambiguous, making the affidavit public and there are constitutional and common law rights of access to judicial records. The State argued Tex.R. Civ. P. 76a applied to the sealing of the affidavit, either independently or through Tex.R.Crim. P. 101.[2]

The newspapers continue their arguments before this court in their petition for mandamus. The State, through the Montgomery County District Attorney, again alleges Rule 76a applies through the context of Tex. R.Crim. Evid. 101, thus there is an adequate remedy at law and mandamus does not lie; the release of the affidavit is not purely a ministerial act, therefore mandamus does not lie; and article 18.01(b) does not prohibit the

discretionary sealing of public information. The Criminal District Attorney of Tarrant County has filed an amicus brief, adopted by Montgomery County, which asserts the trial court has an inherent power to seal the search warrant affidavit.

## *Woods* and Its Applicability

In *Houston Chronicle Publishing v. Honorable W.G. Woods, Jr.*, 949 S.W.2d 492 (Tex. App.—Beaumont 1997, orig. proceeding) this court dealt with many of the same issues. We held:

> Since this dispute arises incident to a criminal prosecution and is based, in part, on the enforcement of a provision of the Texas Code of Criminal Procedure, it is, undoubtedly, a criminal law matter.

*Id.* at 496.

> The State argues this is a civil matter and thus Rule 76a applies. . . . They would be correct if this were a civil matter, but it is not.

*Id.* (footnote and citation omitted).

> The statute, on its face, does not contain any exceptions. In other words, it does not read, "the affidavit, if executed, is public information, unless the trial judge, in his discretion, orders the affidavit sealed," or words to that effect.

*Id.* at 497.

> It is the duty of the Legislature to make laws, and it is the function of the Judiciary to interpret those laws.

*Id.* at 498 (quoting *State v. Mancuso*, 919 S.W.2d 86, 87 (Tex.Crim.App.1996).

> Because, on its face, the literal text of Article 18.01(b) is clear, we will construe the statute according to its plain meaning and dispose of this case without reliance on its legislative history. In other words, we focus on the meaning a typical legislator

---

2. The State was actually referring to the Rules of Criminal Evidence. Tex.R.Crim. Evid. 101 states, in pertinent part:

(c) Hierarchical governance shall be in the following order: the Constitution of the United States, those federal statutes which control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes, these rules, the common law of England. Where possible, inconsistency is to be removed by reasonable construction.

would have given the specific language of the statute at the time of its enactment. *Id.* at 498 (footnote omitted).

With these guidelines in mind, we hold the legislature did not intend any exception to the literal text, since it could have explicitly placed such an exception into the statute, yet did not do so. Moreover, our interpretation does not lead to any absurd consequences which the Legislature could not possibly have intended.

*Id.*

[W]e find no competing constitutional rights, or other rights, to balance since the legislature has already struck that balance.

*Id.* at 499 (footnote omitted).

Article 18.01(b) means what it says. Affidavits accompanying search warrants, if executed, are public information. Since the legislature declined to create an exception, we will not do so. Therefore, once the Chronicle requested the affidavits, Judge Woods had only one ministerial act—release the public information, the search warrant affidavits.

*Id.*

▇▇▇ We find no reason to reconsider the applicability of Rule 76a of the Texas Rules of Civil Procedure through the context of Rule 101 of Texas Rules of Criminal Evidence; for the hierarchical governance set out in Rule 101 does not acknowledge the rules of civil procedure and establishes the Code of Criminal Procedure above civil statutes. Therefore, there is no reason to retreat from our prior holding that Rule 76a does not apply. Nor do we find the State's argument that a pre-arrest, pre-indictment search warrant affidavit, this case, should be viewed differently than a post-arrest, post-indictment one, the *Woods* case. To reiterate: the statute, on its face, does not contain any exceptions. In other words, it does not read, "the affidavit, if executed, is public information, unless the affidavit is part of a pre-arrest or pre-indictment search warrant

and the trial judge, in his discretion, orders the affidavit sealed," or words to that effect.

### The Amicus "Inherent Powers" Argument

This issue was not presented in *Woods.* The amicus argues the trial court may seal the affidavit under its inherent powers, both those that accrue to the court by its very status and those recognized by statute, TEX. GOV'T CODE ANN. § 21.001 (Vernon 1988).[3]

In *Ex parte Elliott,* 950 S.W.2d 714 (Tex. App.—Fort Worth 1997, pet. filed) the court stated:

The courts of this state have no inherent powers that permit them to ignore express statutory provisions. *See Queen v. State,* 842 S.W.2d 708, 711 (Tex.App.—Houston [1st Dist.] 1992, no pet.) They are bound to follow the will of the people as it is expressed in the Constitution and the laws enacted by the legislature.

The court in *Queen v. State,* 842 S.W.2d 708 (Tex.App.—Houston [1st Dist.] 1992, no pet.) stated:

The trial and appellate courts of Texas have no "inherent powers" that permit them to ignore an express statutory or constitutional mandate. This fundamental tenet of our State's jurisprudence does not evaporate when a particular judge of such a court has a concern that a particular individual, accused of a crime, represents a risk to the public safety. Even if that concern is in some particular instance well-founded—concerning this particular instance, we express no opinion about this matter—it still has no such evaporative effect. The courts of this State are bound to follow the will of the people of this State, as that will is expressed by the people in the constitution and in the laws enacted by their duly elected representatives.

---

3. § 21.001. Inherent Power and Duty of Courts

(a) A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction.

(b) A court shall require that proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done.

Our supreme court in *Public Utility Comm'n of Tex. v. Cofer,* 754 S.W.2d 121, 124 (Tex.1988)(orig.proceeding) said:

We recognize that a court has inherent powers it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in preservation of its independence and integrity. *Eichelberger,* 582 S.W.2d at 398. [*Eichelberger v. Eichelberger,* 582 S.W.2d 395 (Tex.1979).] We can say without hesitation that in our adversary system, a court has not only the power but the duty to insure that judicial proceedings remain truly adversary in nature. On the other hand, it is equally true that when the Legislature has spoken on a subject, its determination is binding upon the courts unless the Legislature has exceeded its constitutional authority. *Castillo v. Canales,* 141 Tex. 479, 174 S.W.2d 251, 253 (1943). The courts are not free to thwart the plain intention of the Legislature expressed in a law that is constitutional. *National Surety Corp. v. Ladd,* 131 Tex. 295, 301, 115 S.W.2d 600, 603 (1938). While we have held that courts have certain "inherent powers" and today affirm that this power includes the authority to insure an adversary proceeding, we are cited no cases which have held that these "inherent powers" furnish a basis for either ignoring, refusing to enforce or striking down otherwise valid statutes. The notion that these "inherent powers" authorize such measures raises separation of powers issues of its own; but we need not explore them here.

Again we reiterate: the legislature, through article 18.01(b), has said affidavits accompanying search warrants, if executed, are public information. The legislature declined to create an exception. The courts of this state have no inherent powers that permit them to ignore express statutory provisions such as this one. We are bound to follow the will of the people as it is expressed in the Constitution and the laws enacted by the legislature. Therefore, once the Chronicle and Courier requested the affidavit, Judge Edwards had only one ministerial act—release the public information, the search warrant affidavit. Consequently, his order sealing the search warrant and his order denying the Chronicle and the Courier the search warrant affidavit were in error. Therefore, we conditionally grant the writ of mandamus. We are confident Judge Edwards will rescind both orders which deal with the search warrant affidavit and immediately make them available to the Chronicle, the Courier and the public in general. Only if he fails to do so will the writ issue.

WRIT CONDITIONALLY GRANTED.

CARR, J., sitting by assignment.